## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fifty Below Sales & Marketing, Inc.,
a Minnesota Corporation,

            Plaintiff,

v.

United States of America,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

Civ. No. 05-1380 ADM/RLE

---

United States of America,

            Plaintiff,

v.

Fifty Below Sales & Marketing, Inc.,
a Minnesota Corporation,

            Defendant.

Civ. No. 06-1112 ADM/RLE

---

Neal J. Shapiro, Esq. and Saul A. Bernick, Esq., Bernick and Lifson, P.A., Minneapolis, MN, on behalf of Fifty Below Sales & Marketing, Inc.

Michael R. Pahl, Esq. and Mychal A. Bruggeman, Esq., Assistant United States Attorneys, Washington, DC, on behalf of United States of America.

---

## I. INTRODUCTION

On April 18, 2006, oral argument before the undersigned United States District Judge was heard on the United States of America's ("United States") Motion for Summary Judgment [05-1380, Docket No. 11], Fifty Below Sales & Marketing, Inc.'s ("Fifty Below") Motion for Summary Judgment [05-1380, Docket No. 15], the United States' Motion to Lift Statutory Suspension of Levy [05-1380, Docket No. 26], and the United States' Motion for a Temporary

Restraining Order [06-1112, Docket No. 3]. For the reasons set forth herein, the Motion for a TRO is granted, the United States' Motion to Lift Statutory Suspension of Levy is denied, and Fifty Below's Motion for Summary Judgment and the United States' Motion for Summary Judgment are held in abeyance until July 1, 2006.

## II. BACKGROUND

Fifty Below is a Duluth, Minnesota corporation that specializes in providing Internet marketing services and designing web pages. Brellenthin Decl. [06-1112, Docket No. 6] ¶ 2. Bart Brellenthin ("Brellenthin") is a revenue officer with the Internal Revenue Service ("IRS"), and in November 2004, was assigned to collect employment tax liabilities from Fifty Below. Id. ¶¶ 1, 2. Fifty Below has accrued unpaid employment tax liabilities during several quarters since its inception in 1997, and has failed to timely file employment tax returns. Id. ¶ 4. Brellenthin alleges that Fifty Below is engaged in "pyramiding," or, continuing to incur ever-increasing employment tax liabilities. Id.

Employment taxes include federal income and Federal Insurance Contributions Act (FICA) taxes and Federal Unemployment Act (FUTA) taxes. Id. ¶ 5. Employers report FICA taxes quarterly on Form 941, and FUTA taxes annually on Form 940. Id. Employers withhold FICA taxes from employees' paychecks and then deposit them, along with their own FICA and FUTA contributions, in bank accounts for payment to the IRS three days after each payroll distribution. Id. Fifty Below distributes payroll bi-weekly. Id.

Brellenthin alleges that Fifty Below initially pyramided employment taxes from the third quarter of 1997 up to the first quarter of 2000. Id. ¶ 6. The IRS filed a Final Notice of Intent to Levy on March 31, 1999, and in response, Fifty Below proposed an installment agreement

whereby it would pay off its liabilities in pre-determined monthly installments. Id. ¶¶ 7-8. The agreement was accepted and was in place from April 1999 to September 1999, at which time Fifty Below ceased making payments. Id. ¶ 8. The IRS then issued a second Final Notice of Intent to Levy in November 1999. Id. ¶ 9. Fifty Below again asked for an installment agreement and the IRS again agreed. Id. ¶¶ 9-10. The second installment agreement was in place from January 2000 to September 2000, at which time Fifty Below again defaulted on the agreement by failing to make a payment and incurring additional employment taxes. Id. ¶ 12.

Fifty Below then sought to enter into an offer in compromise, which allows a taxpayer to settle a debt for less than full payment, but was told it was not eligible for such an offer until it had been compliant with making federal tax deposits for the two quarters prior to filing the offer and during the quarter in which it made the offer. Id. ¶ 13. The revenue officer assigned to Fifty Below at the time encouraged Fifty Below to continue making payments under the defaulted agreement until it was eligible to enter into an offer in compromise. Id. From approximately January 2001 to June 2002, Fifty Below made monthly payments of $6,000 and timely deposited its taxes. Id. ¶ 14. Fifty Below proposed an offer in compromise in August 2002, but because Fifty Below allegedly pyramided additional employment taxes during the time that the IRS was considering the offer, the IRS ultimately rejected Fifty Below's offer in June 2004. Id. ¶¶ 15-16.

On January 21, 2005, Brellenthin issued a third Final Notice of Intent to Levy for Form 941 liabilities for quarters 9/30/2000, 6/30/2003, 9/30/2003, 12/31/2003, 3/31/2004, 6/30/2004, and 9/30/2004, and Form 940 liability for 12/31/2003. Id. ¶ 17. Brellenthin also issued a Letter 3174 reminding Fifty Below that the IRS would still levy on the 1998 and 1999 liabilities. Id. On March 4, 2005, Fifty Below requested a collection due process ("CDP") hearing and a

Collection Appeals Program ("CAP") hearing for all quarters listed in Brellenthin's letters, and sought to enter into still another installment agreement. Bernick Aff. [05-1380, Docket No. 17] Ex. A [05-1380, Docket No. 21]. As a result of the request for a CDP hearing, collection of tax liabilities for all periods referenced in the request was suspended, except for the 1998 and 1999 liabilities, for which the time period for requesting a CDP hearing had already expired. Brellenthin Decl. ¶ 19. The CDP hearing was held on April 29, 2005,[1] and on June 13, 2005, the CDP Appeals Officer ("AO") issued his Notice of Determination Letter, sustaining the Final Notice of Intent to Levy and rejecting Fifty Below's request for an installment agreement. Bernick Aff. Ex. F [05-1380, Docket No. 25]; Pahl Decl. [05-1380, Docket No. 12] Ex. 1. Fifty Below then appealed the CDP hearing decision to this Court.

Brellenthin avers that he levied against Fifty Below's bank accounts on February 10, 2005 in order to collect on the 1998 and 1999 liabilities, and recovered $200,000. Brellenthin Decl. ¶ 25. Fifty Below claims that the levy on its bank accounts was unexpected because Fifty Below had met with Brellenthin in December 2004 to inform him that it could keep current with employment taxes in 2005 but would be unable to pay down older debt until the third or fourth quarter of 2005. Rollo 1st Decl. [06-1112, Docket No. 11] ¶ 4. Fifty Below states that Brellenthin collected $300,909 from its bank accounts. Id. Fifty Below further states that because it made payments for the 1999 liability in 2005, it was unable to make payments for

---

[1] With respect to the third Final Notice of Intent to Levy, the hearing was a CDP hearing. With respect to the letter concerning the 1998 and 1999 liabilities, the hearing was an "equivalent hearing." Once the time for applying for a CDP hearing has passed, the right to a CDP hearing has terminated. See 26 U.S.C. §§ 6330(a)(2), (a)(3)(B). Applicants have a right to an equivalent hearing per IRS regulation, but no judicial review of the equivalent hearing determination is available. See 26 C.F.R. § 301.6330-1(i)(2).

2005 liability. Id. ¶ 9.

Brellenthin subsequently determined that further levies on Fifty Below's bank accounts would be ineffective, and therefore endeavored to levy against Fifty Below's assets.[2] A property and asset liquidation specialist ("PALS") inspected Fifty Below's business in October 2005, and valued Fifty Below's assets, which consist mainly of used computers and office furniture, at $8,000. Brellenthin Decl. ¶ 27. Brellenthin informed Fifty Below that he would levy against its assets unless it paid off the 1999 liability.[3] In response, Fifty Below paid $350,300 by December 12, 2005 to extinguish the 1999 liability. Id. ¶¶ 28-29.

Brellenthin issued a fourth Final Notice of Intent to Levy for quarters 12/31/2004 and 6/30/2005 on December 19, 2005, and Fifty Below subsequently requested a CDP hearing with respect to those liability periods. Id. ¶¶ 30-31. Most recently, Brellenthin alleges that Fifty Below pyramided liabilities during the first quarter of 2006 by not paying its bi-weekly employment tax contributions. Id. ¶ 33. As of March 2, 2006, Brellenthin estimates that Fifty Below owes the IRS a total of $2.5 million in employment tax liability. Brellenthin Decl. [05-1380, Docket No. 29] ¶ 8. By April 14, 2006, Fifty Below paid the entire amount owed to the IRS for First Quarter 2006 employment tax liability, in the amount of $308,398.52, but did so in three lump sum payments rather than bi-weekly contributions as required. Rollo 2d Decl. [06-1112, Docket No. 15] ¶¶ 3-4.

---

[2] Saul A. Bernick ("Bernick"), counsel for Fifty Below, avers that he spoke with Brellenthin in the fall of 2005. Bernick Decl. [06-112, Docket No. 12] ¶ 2. Brellenthin allegedly told Bernick that he had obtained a writ to enter the premises of Fifty Below and seize the company's assets. Id. ¶ 3. He further told Bernick that it was his intention to seize the leased interest of the company in its office space and "shut the company down." Id.

[3] The 1998 liability was satisfied with the previous levies. Id. ¶ 28.

## III. DISCUSSION

A.   **Motion for a Temporary Restraining Order**

The United States seeks a TRO pursuant to 26 U.S.C. § 7402(a), which states:

> The district courts of the United States at the instance of the United States shall have jurisdiction to make and issue in civil actions, writs and orders of injunction, . . . and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

The United States avers that a TRO against Fifty Below is both appropriate and necessary to prevent Fifty Below from further pyramiding its employment taxes and to force Fifty Below to timely file its 940 and 941 Forms with the IRS.[4] Fifty Below's past history indicates that without a TRO in place, Fifty Below will continue to fail to file the required forms and not timely pay mandatory FICA and FUTA taxes to the IRS. The United States further avers that Fifty Below's continued failure to timely file and pay taxes undermines the fundamental premise of the federal tax system. Alternatively, the United States avers that while it need not establish the <u>Dataphase</u> factors required for a non-statutory TRO or injunction, those standards are satisfied here as well. See <u>Dataphase Sys., Inc. v. CL Sys., Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

Fifty Below responds that a TRO is not warranted because the United States has an adequate remedy at law and has not shown likelihood of success on the merits. Also, Fifty Below has tried to remain current, but has had trouble paying its bi-weekly obligations due to the

---

[4] The United States further avers that the standards for granting a TRO are identical to the standards for issuing a preliminary injunction, and that because Fifty Below had notice and a hearing, the TRO should be treated as a preliminary injunction.

IRS's insistence upon using these funds to pay off past liabilities. It is not the case that Fifty Below, like a tax protestor, has intentionally attempted to obstruct the collection of employment taxes; rather, Fifty Below is trying as best it can with what it has to satisfy its obligations.

At oral argument, the United States conceded that it has no evidence that Fifty Below has acted in bad faith in failing to timely pay its employment tax liabilities or file the required tax forms with the IRS, and Fifty Below has consistently maintained that it has been doing its best to remain current and satisfy its obligations. However, despite Fifty Below's best efforts, it has still developed a pattern over approximately nine years of frequently failing to timely file tax forms and pay employment tax liabilities as they become due. As a result, the United States has established under both 26 U.S.C. § 7402(a) and the Dataphase factors that a TRO is appropriate in this case. Additionally, because Fifty Below received proper notice and a hearing, the TRO Motion is treated as one for a preliminary injunction. See Baker Elec. Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994). Fifty Below must timely file its 940 and 941 forms, and timely pay its employment tax liabilities, from this day forward, in compliance with this Order.

**B.     Summary Judgment Motions**

**1.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion

for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

While 26 U.S.C. § 6330(d), which covers judicial review of CDP hearings, fails to set forth a specific standard of review, the legislative history behind the provision indicates that courts are to review CDP hearing determinations for an abuse of discretion:

> Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion. In such cases, the appeals officer's determination as to the appropriateness of collection activity will be reviewed using an abuse of discretion standard of review.

H.R. Conf. Rep. No. 105-599, at 266 (1998). Other courts have so held. See, e.g., Comfort Plus Health Care, Inc. v. Commissioner, 2005 WL 1656914, at *4 (D. Minn. July 14, 2005); Goza v. Commissioner, 114 T.C. 176, 181-82 (2000).

### 2. Review of AO Determination

In this case, both the United States and Fifty Below have moved for summary judgment. The United States argues that as a threshold matter, this Court lacks subject matter jurisdiction to consider any appeal by Fifty Below regarding the 1999 tax liability. Fifty Below did not timely request a CDP hearing for the 1999 tax liability, and therefore is not entitled to judicial review with respect to those tax periods. See 26 U.S.C. §§ 6330(a)(2), (a)(3)(B) (stating that a person must request a CDP hearing within thirty days of receipt of notice of intent to levy); Comfort Plus, 2005 WL 1656914, at *3. Fifty Below does not appear to contest this contention. The Court finds that it lacks jurisdiction to consider any appeal with respect to the 1999 tax liability.

Fifty Below's principal contention is that the AO abused his discretion by failing to consider Fifty Below's proposed installment agreement. Fifty Below contends that the AO was wrong about whether Fifty Below was able to keep current with its employment taxes, wrong about whether failure to be current prevents consideration of an installment agreement, and failed to balance the need for efficient collection of taxes against the "legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3)(C). By contrast, the United States argues that the AO did not abuse his discretion in rejecting Fifty Below's proposed installment agreement because Fifty Below has a long history of non-compliance with employment tax laws, and was not meeting its current employment tax obligations.

A review of the AO's Notice of Determination Letter [Pahl Decl. Ex. 1] and his CDP hearing notes [Bernick Aff. Ex. F] reveal that the AO in fact did consider Fifty Below's proposed installment agreement. In his Notice of Determination Letter, the AO explains that his determination that an installment agreement was inappropriate was based on Fifty Below's failure to "get and remain current" and history of noncompliance with previous installment agreements. Pahl Decl. Ex. 1 (emphasis added). The AO stated: "Given all factors, including a multimillion dollar employment tax liability, noncompliance [through] the last filed employment tax return, the length of this problem and past failures, Appeals has determined that an Installment Agreement is not appropriate and you don't qualify for [ ] other collection alternatives." Id. In his hearing notes, the AO describes at length his consideration of Fifty Below's proposed installment agreement, and reveals that his rejection of the agreement was due in large part to the history of Fifty Below's noncompliance and the substantial amount of

9

liability still owed by Fifty Below:

> In my 17 years working for the IRS, I have yet to see a small business (gross receipts $5 million or less) put away $2.5 million in trust fund taxes through an installment agreement. The balance due simply boggles the mind when balanced against other competing expenses and priorities of the business. . . . I have never seen a small business such as this put away a seven-figure debt. It is not the place of appeals to put together an installment agreement on a wing and a prayer and hope that everything turns out. It is supposed to be based on economic reality in our best estimation of collection potential.

Bernick Aff. Ex. F.

Furthermore, the record reveals that the AO did in fact balance the United States and Fifty Below's competing concerns. While the AO does not explain in detail in his Notice of Determination Letter the factors he considered when balancing the parties' competing interests, he does address the competing interests in his hearing notes:

> The taxpayer's power of attorney [raised the issue that] the taxpayer employs a substantial number of employees in an economically depressed region. . . . While it would indeed be bad for the Duluth area to lose an employer of this size, the IRS has been underwriting this business since 1998 with no luck. I don't at this moment see how Appeals can put together another [installment agreement]. The Profit and Loss sheet is showing projected turnaround, reduced expenses and increased income. The IRS and [Fifty Below] have been [through] this before and it appears to be more of the same.

Bernick Decl. Ex. F.

At oral argument, Fifty Below averred that its computer business is of the type that normally struggles financially in the beginning, but reaps profits later on. Fifty Below further averred that its business has "turned the corner." The United States noted at oral argument that it is powerless to act against Fifty Below unless the Court grants its motions, and that it needs the tools that the Court can give it in order to proceed. The United States further stated that if the Court grants its Motions, it will not automatically levy against Fifty Below but instead will reassess the situation and then decide how to proceed. Since the April 18 hearing, the Court has

10

received three letters [06-1112, Docket Nos. 18-20] from the parties indicating that there may still be room for agreement. Given Fifty Below's recent demonstration that it has the financial ability to pay off substantial portions of its liability and remain current, and the indication from the parties that it may be possible to resolve this matter in a way that allows Fifty Below to remain in business, the Court will hold the summary judgment motions in abeyance until July 1, 2006, so that Fifty Below may have an opportunity to negotiate directly with the IRS. Unless the Court is advised an agreement has been reached, on July 1, 2006, the Court will rule on the summary judgment motions with no further briefing or argument.

**C.    Lifting the Levy Suspension**

26 U.S.C. § 6330(e)(1) prohibits the IRS from collecting taxes by levy from a taxpayer once the taxpayer has requested a CDP hearing, and while any appeals from the CDP hearing are pending. Because Fifty Below appealed the AO's adverse determination in the CDP hearing, the IRS is currently barred from levying on Fifty Below's assets. Section 6330(e)(2) provides that the restriction on levying during appeals does not apply if "the underlying tax liability is not at issue in the appeal and the Court determines that the [United States] has shown good cause not to suspend the levy." The statute does not include any further definition of "good cause," but the Tax Court has noted that good cause can be shown when "the taxpayer has used the collection review procedure to espouse frivolous and groundless arguments and otherwise needlessly delay collection." Burke v. Commissioner, 124 T.C. 189, 196-97 (2005). The underlying tax liability is not at issue in this case, and therefore the only issue for the Court is whether the United States has shown good cause not to suspend the levy.

The United States argues that since requesting a CDP hearing, Fifty Below has not

satisfied any of its liability, has continued to not file employment tax returns or pay employment taxes as they come due, and has incurred additional estimated employment tax liability of approximately $1.4 million.  The United States further argues that Fifty Below is using the CDP hearing process as a mechanism to delay collection.  Fifty Below responds that it is not attempting to avoid its tax liabilities and instead is attempting to keep current.  Fifty Below avers that it paid the IRS $550,317.56 in employment taxes during the first two quarters of 2005, and had trouble keeping current after the second quarter due to the United States' levy on its accounts in February 2005.  Fifty Below also paid the IRS $350,300 in the latter half of 2005 to pay off the remainder of the 1998 and 1999 employment liabilities.

The United States has not shown good cause to not suspend the levy that is currently in place.  There is no clear evidence that Fifty Below is using the CDP hearing process to intentionally delay collection action.  Instead, it appears that Fifty Below has a good faith basis for believing in its proposed installment plan, and made efforts to pay off its liability.  As a result, the levy suspension shall remain in place until no appeals related to the CDP hearing are pending, in accordance with 26 U.S.C. § 6330(e)(1).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The United States' Motion for a Temporary Restraining Order [06-1112, Docket No. 3] is **GRANTED,** and treated as one for a preliminary injunction;

2. The United States' Motion to Lift Statutory Suspension of Levy [05-1380, Docket No. 26] is **DENIED**; and

      3. Fifty Below's Motion for Summary Judgment [05-1380, Docket No. 15] and The United States' Motion for Summary Judgment [05-1380, Docket No. 11] are **HELD IN ABEYANCE** until July 1, 2006.  Unless the Court is advised an agreement has been reached with the IRS, the Court will rule in July 2006 on the summary judgment motions with no further briefing or argument.

                                              BY THE COURT:

                                                          s/Ann D. Montgomery
                                              ANN D. MONTGOMERY
                                              U.S. DISTRICT JUDGE

Dated:  May 5, 2006.